UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE LASALLE GROUP, INC.,

    Plaintiff,

v.                                                  Case No. 04-71563
                                                  Hon. Sean F. Cox

ROBERT CROWELL d/b/a
ARMCO MASONRY,

    Defendant.
_____

## OPINION AND ORDER

    This matter is before the Court on Plaintiff's Motion for summary judgment. Defendant did not respond to Plaintiff's Motion. A hearing was held November 21, 2006, Defendant did not attend the hearing. For the following reasons, the Court **GRANTS** Plaintiff's Motion for summary judgment on its claims and on Defendant's counterclaims.

### I.    BACKGROUND

    This action arises out of the breach of a subcontract for masonry work. On November 10, 2003, Plaintiff sub-contracted with Defendant to perform masonry work for the construction of the New Sam's Club Relocation at 5450 Carpenter Road, Ypsilanti, Michigan. Defendant agreed to furnish all labor and materials necessary to complete the masonry work in a good and workmanlike manner for a contract price of $660,000.00.

    The parties dispute who breached the agreement. Plaintiff claims the work was to be completed by February 4, 2004, but that date was extended to February 18, 2004. The work was

not completed by February 18, 2004.  On April 14, 2004, Defendant abandoned the project and immobilized its equipment.  Defendant denies it agreed to complete the work by February 4th or 18th of 2004.  The agreement states that the sub-contract work must be complete by May 31, 2004.

On April 14, 2004, Plaintiff sent Defendant a notice of default.  Defendant did not cure the default.  Plaintiff hired another subcontractor to finish the masonry project.

Defendant denies that he agreed to finish the project on the dates cited by Plaintiff.  However, Defendant does not state when he believed the work was supposed to be completed.  Defendant claims that Plaintiff breached the subcontract first by failing to provide the agreed upon safety and security measures for the job site.  Defendant is a nonunion contractor.  According to Defendant, Plaintiff represented that it would provide a separate entrance for the nonunion work.  He contends Plaintiff failed to provide a second entrance and he and his employees were continually harassed and threatened by union members.  Further, union members allegedly vandalized and stole some of Defendant's equipment.  Additionally, Defendant argues that Plaintiff represented that it would provide a level compacted support area for masonry scaffolding, which Defendant claims Plaintiff failed to do, resulting in Defendant's equipment constantly becoming stuck in the mud.

Despite these alleged breaches, Defendant claims he continued to perform.  But, on March 24, 2004, Plaintiff and Defendant entered into a Promissory Note because Defendant did not have enough money to pay his employees and subcontractors.  The Promissory Note is in the amount of $250,000.00.  Plaintiff claims it advanced Defendant a total of $110,000.00 under the Promissory Note.

On March 25, 2004, the parties executed a Security Agreement to secure payment of the Promissory Note. Under the Security Agreement, Defendant granted Plaintiff a security interest in various items and accounts.

On April 27, 2004, Plaintiff filed a Complaint. A Second Amended Complaint was filed December 30, 2005 alleging: (1) breach of contract based on the subcontract; (2) violation of the Michigan Building Contract Fund Act; (3) breach of contract based on the Promissory Note; (4) breach of contract based on the Security Agreement; and (5) fraud. Defendant denies Plaintiff's allegations. Defendant filed an Amended Counterclaim on January 13, 2006 alleging: (1) breach of contract based on the subcontract; (2) unjust enrichment; (3) fraud; (4) negligence; and (5) promissory estoppel.

On May 30, 2006, Defendant's counsel, Michael Mauro, filed a motion to withdraw. The motion was granted by Judge Bernard Friedman on June 23, 2006. Prior to Michael Mauro, Defendant was represented by Paul Callam. Callam also filed a motion to withdraw as counsel for Defendant. Both attorneys cite a breakdown in the attorney-client relationship.

Plaintiff filed the instant Motion for summary judgment on July 28, 2006. Plaintiff seeks summary judgment on both its claims and Defendant's counterclaims. Defendant did not file a response, rather, Defendant sent a letter to the Court on August 15, 2006, requesting more time to obtain counsel. The Court construed the letter as a Motion for extension of time, which the Court denied citing Judge Friedman's June 23, 2006 Order directing Defendant to find new counsel or act pro se, and to comply with the amended dates. No appearance has been filed by counsel for Defendant; Defendant did not respond to Plaintiff's Motion; and Defendant did not attend the hearing.

3

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.  ANALYSIS

Because Defendant failed to file a response, the Court is justified in relying on the facts advanced by the Plaintiffs. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Additionally, the Court is not required to conduct its own probing investigation of the record, it is the non-moving party's responsibility to set forth specific facts showing there is a genuine issue for trial. *Id*. at 405. However, the court may not automatically accept the conclusions argued in the unopposed motion, rather, the court must carefully review the legitimacy of the motion. *Id*. at 407.

Plaintiff seeks summary judgment on its claims, as well as Defendant's counterclaims.

**A.    Breach of the Subcontract**

Plaintiff claims it is entitled to summary judgement on its claim of breach by Defendant of the subcontract for masonry work.  Plaintiff contends that Defendant admitted he breached, citing to Defendant's Amended Answer.  In response to Plaintiff's allegations that Defendant did not complete the work by February 4, or February 18, 2004, Defendant admitted that he did not complete the work.  [Amended Answer, ¶¶12 and 26].  Defendant admitted that he abandoned the project on April 14, 2004, but claims the abandonment was due to Plaintiff's breaches. [Motion, Exhibit 2, ¶13].

Defendant claims Plaintiff breached the subcontract because Plaintiff made various representations during negotiations, including that it would provide a safe and secure job site, separate entrances for union and nonunion workers, and good site road conditions. [Motion, Exhibit 2, Counterclaim ¶11].  Defendant claims Plaintiff failed to meet its representations.

The subcontract agreement includes an integration clause:

> This Subcontract Agreement is the entire and integrated agreement between the parties.  All prior negotiations, proposals, representations or agreements, whether written or oral, not expressly incorporated herein, are superseded.  Except as otherwise provided in the Subcontract Documents all modifications of this Subcontract must be in writing and signed by the parties hereto to be valid.

[Motion, Exhibit 3, p.2].  "[W]hen the parties include an integration clause in their written contract, it is conclusive and parol evidence is not admissible..." *UAW-GM Human Resource Center v. KSL Recreation Corporation*, 228 Mich.App. 486, 502-503 (Mich.App. 1998).  The only exception is in cases of fraud that invalidate the integration clause.  Defendant does allege a counterclaim of fraud, but does not provide any evidence establishing that Plaintiff made the alleged representations or that Plaintiff knew they were false when made.  Thus, Plaintiff is entitled to summary judgment on Defendant's counterclaim of fraud.

5

Plaintiff is also entitled to summary judgment on Defendant's counterclaim for breach of the subcontract because the only basis for Plaintiff's alleged breach is failure to adhere to the representations allegedly made prior to entering the subcontract. Any such representations were superseded and did not become part of the subcontract, by virtue of the integration clause.

Further, Plaintiff is entitled to summary judgment on its claim of breach of the subcontract. Plaintiff establishes, by the terms of the subcontract, that the masonry work was to be completed at least by May 31, 2004. There is no dispute that Defendant did not, and has not, completed the masonry work. Defendant, by failing to respond, fails to offer any evidence that the breach was justified. Therefore, Plaintiff is entitled to summary judgment.

**B.      Breach of the Promissory Note and Security Agreement**

Plaintiff alleges that Defendant breached the Promissory Note and Security Agreement. On August 13, 2004, Plaintiff filed a Motion for possession of secured collateral. Judge Friedman granted Plaintiff's Motion on November 19, 2004, and ordered Defendant to remit to Plaintiff proceeds from two receivables, up to $110,000.00. [Motion, Exhibit 9]. Plaintiff claims it was unable to recover on the receivables because Defendant misrepresented their value.

Implicit, and necessary, in Judge Friedman's Order granting Plaintiff possession of secured collateral is the finding that Defendant breached the Promissory Note. Defendant does not offer any evidence to the contrary. Defendant contends that the Promissory Note is invalid because he entered into it under duress, as he was unable to meet his payroll obligations otherwise. Even if that did constitute duress, Defendant fails to offer any evidence to support his allegation.

Accordingly, Plaintiff is entitled to summary judgment on its claims that Defendant

breached the Promissory Note and Security Agreement.

### C. Violation of the Michigan Building Contract Fund Act

To establish a prima facie case for violation of the Michigan Building Contract Fund Act, MCL §570.151 *et seq.*, a plaintiff must establish: (1) the defendant is a contractor or subcontractor engaged in the building construction industry; (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project; (3) the defendant retained or used those funds, or any part of those funds; (4) for any purpose other than to first pay laborers, subcontractors, and materialmen; (5) who were engaged by the defendant to perform labor or furnish material for the specific project. *DiPonio Construction Company, Inc. v. Rosati Masonry Company*, 246 Mich.App. 43, 49 (Mich.App. 2001).

There is no dispute that Defendant is a subcontractor engaged in the building construction industry. [Motion, Exhibit 2, ¶42]. Defendant admits that he received at least some payment on the project. *Id.* at ¶43. Plaintiff's provided an affidavit from Chester Jablonski, Plaintiff's Chief Financial Officer averring that Plaintiff paid out $389,645.64 to a new subcontractor and Defendant's sub-subcontractors, "in excess of [Defendant's] original subcontract amount of $660,000.00." [Motion, Exhibit 13]. Of the $389,645.64 paid by Plaintiff, $267,145.64 went to pay subcontractors hired by Defendant that should already have been paid by Defendant.

Because Defendant received payment from Plaintiff to pay for his subcontractors and failed to do so, requiring Plaintiff to pay the subcontractors again to avoid liens, Plaintiff is entitled to summary judgment on its claim that Defendant violated the Michigan Building Contract Fund Act.

### D. Plaintiff's Claim for Fraud

Plaintiff alleges Defendant committed fraud by representing that the receivables he pledged as collateral for the Promissory Note were worth more than they were. As collateral, Defendant pledged two receivables from two projects for Wal-Mart in Kansas. He claimed he was owed a total of $587,467.43 for the two projects. [Motion, Exhibit 10]. When Plaintiff later attempted to collect on those receivables, it learned that Defendant was not owed any money. One of the contracts was terminated for default on January 28, 2004. [Motion, Exhibit 11]. The other contract appears to have been paid in full, but, Defendant made a request for additional payment in approximately November 2003 based on additional work that was denied. [Motion, Exhibit 15]. Defendant pledged the receivables on March 25, 2004.

Under Michigan law, a plaintiff must establish the following to prove a claim for fraud: (1) defendant made a material representation; (2) the representation was false; (3) that when defendant made the representation it knew that it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that defendant made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff suffered injury. *Kassab v. Michigan Basic Property Ins. Assoc.*, 441 Mich. 433, 442 (1992).

The Court finds there is no issue of material fact that Defendant knew the receivables were not worth what he claimed they were at the time he pledged them. Plaintiff relied on Defendant's representations about the value of his receivables in entering the Promissory Note and Security Agreement. Plaintiff is entitled to summary judgment on its claim of fraud against Defendant based on Defendant's misrepresentations of the value of its receivables used as collateral in the Security Agreement.

E.    **Defendant's Remaining Counterclaims**

1.    **Unjust Enrichment**

Plaintiff argues it is entitled to summary judgment on Defendant's counterclaim for unjust enrichment. Defendant asserted Plaintiff would be unjustly enriched if it was not required to pay Defendant for his labor and improvements. Plaintiff asserts Defendant cannot maintain a claim for unjust enrichment because there is an express agreement covering the same subject matter.

"In order to sustain a claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corporation v. City of Detroit*, 256 Mich.App. 463, 478 (Mich.App. 2003)(citation omitted). "If this is established, the law will imply a contract in order to prevent unjust enrichment." *Id*. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id*.

Here, there is undoubtedly an express agreement covering the compensation Defendant is to receive for his work on the masonry project. [Motion, Exhibit 3]. Thus, Plaintiff is entitled to summary judgment on Defendant's counterclaim for unjust enrichment.

2.    **Negligence**

Under Michigan law, in order to prevail on a claim of negligence, the plaintiff must establish: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the defendant's breach proximately caused the plaintiff's harm; and (4) damages to the plaintiff. *Hunley v. Dupont Automotive*, 341 F.3d 491, 496 (6th Cir. 2003).

Defendant asserts a counterclaim that Plaintiff was negligent for failing to protect

Defendant's property from theft and damage. [Motion, Exhibit 2]. Defendant fails to establish that Plaintiff owed him a duty to prevent theft or damage to Defendant's property. As noted above, no duty arose pursuant to the subcontract.

Accordingly, Plaintiff is entitled to summary judgment on Defendant's counterclaim of negligence.

### 3.    Promissory Estoppel

Similar to unjust enrichment, a claim for promissory estoppel may only lie in the absence of an express contract. *APJ Associates, Inc. v. North American Philips Corporation*, 317 F.3d 610, 617 (6th Cir. 2003). There is an express contract covering payment for Defendant's work. Thus, Plaintiff is entitled to summary judgment on Defendant's counterclaim of promissory estoppel.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for summary judgment on its claims and Defendant's counterclaims.

**IT IS SO ORDERED.**

As to the issue of damages, Plaintiff submitted a proposed judgment for entry by the Court. Plaintiff's proposed judgment contained findings not discussed in Plaintiff's Motion or at the hearing. Additionally, Plaintiff failed to offer evidence to support the findings. The Court declines to enter Plaintiff's proposed judgment.

**IT IS FURTHER ORDERED** that:

1. Plaintiff is to submit a brief on damages by December 4, 2006, limited to damages discussed in Plaintiff's Motion for summary judgment and including proper

evidentiary support.  All exhibits in the Judge's Copy must be tabbed and highlighted.

2. Defendant is to respond to Plaintiff's brief on damages by December 11, 2006.

3. Plaintiff may file a reply by December 15, 2006.

S/Sean F. Cox
Sean F. Cox
**United States District Judge**

**Dated:  November 27, 2006**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on November 27, 2006, by electronic means and by ordinary mail upon:**

**Robert Crowell
P. O. Box 677
Nixa, MO   65714**

S/Jennifer Hernandez
**Case Manager**